UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Giovanny Cruz-Olvera, | Case No. 2:26-cv-00218-CDS-EJY |
| Petitioner | **Order Denying the Petitioner's Writ of Habeas Corpus** |
| v. | |
| Brian Henkey, et al., | [ECF No. 1] |
| Respondents | |

Petitioner Giovanny Cruz-Olvera initiated this action on January 30, 2026, by filing a petition for writ of habeas corpus. *See* Pet. for writ, ECF No. 1. Therein, Cruz-Olvera requests a writ ordering the respondents to immediately release him, along with other related relief. *Id.* The respondents filed a response to the petition. Resp., ECF No. 8.[1] This petition is fully briefed. *See* Reply, ECF No. 10. Because I find that the petitioner seeks relief outside the court's jurisdiction, and fails to meet the *Mathews* factors, I deny Cruz-Olvera's petition for writ of habeas corpus.

I. Background

Cruz-Olvera is a citizen of Mexico who first entered the United States on May 21, 2011, as an unaccompanied juvenile and was granted voluntary return. Form I-213 Record, Resp'ts' Ex. A, ECF No. 9-1 at 3. On January 15, 2012, Cruz-Olvera entered the United States again and was served with a notice to appear and was thereafter released. *Id.* Cruz-Olvera was ordered removed on July 7, 2017, under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA) and was removed on October 8, 2019. *Id.* Sometime in 2020, Cruz-Olvera re-entered the United States without inspection at an unknown location. *Id.*

---

[1] The named respondents are Brian Henkey, Director of Enforcement and Removal Operations; Michael Bernacke, Acting Director, Las Vegas, Nevada US Immigration and Customs Enforcement; Pamela Bondi, Attorney General of the United States; Kristi Noem, Secretary of the Department of Homeland Security; Todd Lyons, Director, US Immigration and Customs Enforcement; John Mattos, Warden of the Nevada Southern Detention Center.

On March 30, 2025, Cruz-Olvera was arrested for driving under the influence and speeding. Resp'ts Ex. A, ECF No. 9-1 at 3. That same day, he was apprehended and detained by U.S. Immigration and Customs Enforcement and charged under 8 C.F.R. § 241.8 (INA § 241(a)(5)) for entering the U.S. without status, which triggered reinstatement of his 2017 removal order. ECF No. 1 at 2, ¶ 3. Cruz-Olvera was transferred to Nevada Southern Detention Center on November 18, 2025. *Id.*

On April 8, 2025, Cruz-Olvera attended a credible fear interview with the U.S. Citizenship and Immigration Services, and the asylum officer found that Cruz-Olvera faced a reasonable possibility of future torture should he ever return to Mexico. *Id.* at 3, ¶ 4; Pet'r's Ex. 1, ECF No. 1-2 at 13. After a Form I-918B was issued, Cruz-Olvera became eligible to file a Form I-918A Petition for Qualifying Family Member of a U-1 Visa Recipient. ECF No. 1 at 11, ¶ 36. Cruz-Olvera filed a Form I-918A on April 26, 2025. *Id.*

On June 6, 2025, DHS filed a Form I-863, Notice of Referral to Immigration Judge, with the Las Vegas Immigration Court. *Id.* 3, ¶ 4. On June 10, 2025, Cruz-Olvera filed a Form I-589, application for withholding of removal and protection under the Convention Against Torture (CAT). *Id.* at ¶ 38. And on July 21, 2025, he submitted a prehearing statement and brief in support of withholding for removal and CAT. Prehearing statement, Pet'r's Ex. 7, ECF No. 1-2 at 106–25.

On July 28, 2025, Cruz-Olvera attended an individual hearing. ECF No. 1 at 3, ¶ 4. On August 25, 2025, the immigration judge issued an oral ruling denying the petitioner's applications for withholding under the INA and the CAT protection. *Id.*; Pet'r's Ex. 8, ECF No. 1-2 at 283. On September 10, 2025, Cruz-Olvera appealed to the BIA. ECF No. 1 at ¶¶ 5, 41. This appeal remains pending.[2]

---

[2] On January 20, 2026, the BIA returned the case to the IJ as the record of proceedings were incomplete due to recording and transcription issues. ECF No. 8 at 3; ECF No. 10 at 3; Pet'r's, Ex. 9, ECF No. 10-1 at 5.

On September 12, 2025, the petitioner attended an interview for review of custody status at the Las Vegas ICE office, where his request for release was denied. *Id.* at 13, ¶ 42. On November 3, 2025, the petitioner attended a custody redetermination hearing before an immigration judge, challenging his prolonged detention, presented evidence, and argued that his ongoing withholding of removal and CAT appeal before the BIA as well as his derivative U-1 visa application meant that his removal was not reasonably foreseeable. *Id.* at 3–4. That same day, the immigration judge denied the petitioner's release on bond, finding that the petitioner was a "danger to the community and a flight risk." *Id.* at 4, ¶ 7; Pet'r's Ex. 4, ECF No. 1-2 at 64.

In the petition, Cruz-Olvera asserts that (1) his prolonged detention violates his Fifth Amendment substantive due process rights, and (2) his deficient custody determination violates his Fifth Amendment procedural due process rights. *See* ECF No. 1. Cruz-Olvera also seeks declaratory relief under 28 U.S.C. § 2201 and injunctive relief. *Id.*

## II. Legal standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that their continued detention violates of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. Discussion

As a threshold matter, I first address what statute governs the petitioner's detention. The petitioner requests the court to find that his removal proceedings are governed by 8 U.S.C. § 1231(a)(6). ECF No. 1 at 28. But the respondents assert that the petitioner is in limited

withholding only proceedings under 8 C.F.R. § 208.31(e) and that the petitioner is detained under 8 U.S.C. § 1231(a)(5) subject to the reinstatement of the prior order of removal. ECF No. 8 at 3. It is undisputed by the parties that Cruz-Olvera's removal order was reinstated. *See id.*; ECF No. 10 at 2–3. Such reinstatement is subject to 8 U.S.C. § 1231(a)(5). "A reinstated removal order is administratively final." *Padilla-Ramirez v. Bible*, 882 F.3d 826, 831 (9th Cir. 2017) (citations omitted).[3] So, when Cruz-Olvera's order was reinstated, he was subject to the mandatory detention for a period of 90 days pursuant to 8 U.S.C. § 1231(a). However, after the 90-day period, the authority for the petitioner's detention shifted to § 1231(a)(6) by virtue of him being a noncitizen ordered removed who is inadmissible under § 1231(a)(6).[4] *See Alvarez v. Beccerra*, 2026 U.S. Dist. LEXIS 23329, at *8 (E.D. Cal. Feb. 4, 2026). As such, I find that he is detained pursuant to § 1231(a)(6).

### A. Cruz-Olvera's petition is denied.

Cruz-Olvera first argues that his prolonged detention violates his Fifth Amendment substantive due process rights. ECF No. 1 at 21. He asserts that despite submitting a brief with over 30 pages of evidence demonstrating lack of violent or felonious criminal history, and strong ties to the U.S., he was denied release on bond when an immigration judge made a finding that he was deemed a flight risk or danger to the community, without an explanation. *Id.* at 23, ¶ 78. As to his second ground for relief, he asserts that his deficient custody determination violates his procedural due process rights under the Fifth Amendment. *Id.* at 25. In particular, he argues that he has been detained well over six months, and that is beyond the presumptively reasonable period contemplated in *Zadyvdas*.

The respondents assert two arguments related to the petitioner's detention: (1) the petitioner was granted a bond hearing and provided an opportunity to be heard, and the

---

[3] Section 1231(a)(6) provides that "[a]n alien ordered removed who is inadmissible under section 212 [8 U.S.C. § 1182] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision."

[4] Cruz-Olvera was ordered removed under § 212(a)(6)(A)(i). Resp'ts' Ex. A, ECF No. 9-1 at 3.

immigration judge denied his bond and found that he was a danger to the community and was a flight risk, and (2) the petitioner's removal is reasonably foreseeable because his case has been moving swiftly. ECF No. 8 at 3–4.

I first address the petitioner's second ground for relief. I agree that the petitioner's removal is not reasonably foreseeable, given the recent remand from the BIA back to immigration court. *See* Pet'r's, Ex. 9, ECF No. 10-1 at 5. Further, while Cruz-Olvera has been detained beyond the presumptive six-month period, this alone does not indicate that his due process rights have been violated. *See Rodriguez Dias v. Garland*, 53 F.4th 1189, 1212 (9th Cir. 2022). Section 1231(a) provides that the mandatory-detention period begins on the latest of three possible dates: "(i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order; or (iii) if the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B) (citation modified). A noncitizen held under § 1231(a) can challenge his detention only if he has been detained for longer than six months **and there is no likelihood that he will be removed in the reasonably foreseeable future**. *See Zadvydas*, 533 U.S. at 701–02.

"In particular, § 1231(a)(6) provides that after a 90-day removal period, a noncitizen may be detained or may be released under terms of supervision." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022) (citation modified). After the 90-day removal period has elapsed, ongoing detention is only authorized by the government for "four categories of people: (1) those who are inadmissible on certain specified grounds; (2) those who are removable on certain specified grounds; (3) **those it determines to be a risk to the community**; and (4) those it determines to be unlikely to comply with the order of removal." *Arteaga-Martinez*, 596 U.S. at 578–79 (quoting 8 U.S.C. § 1231(a)(6)) (citation modified). *Artega-Martinez* provides that "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings

before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence." *Arteaga-Martinez*, 596 U.S. at 581. Rather, Section 1231(a)(6) provides only that a "noncitizen ordered removed 'may be detained beyond the removal period' and if released, 'shall be subject to [certain] terms of supervision.' On its face, the statute says nothing about bond hearings before immigration judges or burdens of proof, nor does it provide any other indication that such procedures are required." *Id.* Accordingly, I do not find that the petitioner's due process rights were not violated merely because he has been detained for more six months.

I next turn to the petitioner's first and third grounds for relief,[5] which I deny for two reasons: (1) the petitioner requests relief that is outside of this court's jurisdiction, and does not provide points and authorities to support the relief requested[6]; and (2) even if the court had such authority, the petitioner fails to meet the *Mathews* factors.

First, the petitioner requests a declaratory judgment and requests the court to issue a declaration that he is "entitled to a **new custody redetermination** hearing where he has the opportunity to challenge the IJ's constitutionally **deficient judgment** and where the government bears the burden of proof." ECF No. 1 at 29 (emphasis added).

The petitioner argues that despite submitting a brief along with over 30 pages of evidence demonstrating his lack of violent or felonious criminal history, an IJ denied release on bond. ECF No. 1 at 23, ¶ 78. In other words, he argues that denial of his request for bond was an erroneous deprivation of his due process rights. But this appears to be a mere disagreement with

---

[5] Because I find that the petitioner's first ground, ECF No. 1 at 21 and third ground, *id.* at 28, request similar relief, I address those together.

[6] The petitioner also requests this court to declare him a member of the bond denial class pursuant to the parameters established in *Maldonado v. Feeley*, 2025 WL 2676082 (D. Nev. Sep. 17, 2025). ECF No. 1 at 24, ¶ 83. But he provides no points and authorities in support of this request. Rather, he seeks separate relief on his third ground, requesting declaratory relief under 28 U.S.C. § 2201. *Id.* at 28. He requests this court to find that he is categorically detained under 8 U.S.C. § 1225(b)(1), (2) and further, to find that the immigration court's new practice of denying bond redetermination to bond denial class members violates the INA. *Id.* Because I find that the petitioner has not provided support nor cited to points or authorities to grant the requested relief, I deny his requested relief.

6

the merits of the IJ's decision, which this court lacks jurisdiction to review. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). Congress has barred courts from reviewing discretionary judgments regarding the detention and release of noncitizens. *See Martinez v. Clark*, 36 F.4th 1219, 1224 (9th Cir. 2022) (explaining that while federal courts may review constitutional claims, an immigration court's determination that a noncitizen is a danger to the community is a discretionary judgment not subject to review).

Nonetheless, I consider whether due process requires that the petitioner receive additional relief. Ninth Circuit precedent forecloses an **inherent** due process right to a second or successive bond hearing by virtue of petitioner's continued and prolonged detention. *Rodriguez Diaz*, 53 F.4th at 1209–10. But *Rodriguez Diaz* does not foreclose on an individualized analysis as to whether such a second bond hearing is necessary to satisfy due process.

In determining what process is due to individuals detained by ICE, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976) applies. Under *Mathews*, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. *Id.* at 335.

The petitioner has a substantial private interest in his personal freedom. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690; *see also Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011) (An individual's private interest in freedom from prolonged detention is unquestionably substantial.). But the strength of his private interest is diminished from his prior custody redetermination hearing held in November of 2025 where he had the opportunity to present evidence. At the conclusion of that hearing, the immigration judge found he was a flight risk and a danger to the community. *See* ECF No. 1 at 4, ¶ 7; Pet'r's Ex. 4, ECF No. 1-2 at 64. Still, on balance, because over three months have passed since his last custody

redetermination hearing, this factor favors a finding that petitioner's private liberty is implicated by his ongoing detention.

The second *Mathews* factor is "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. "Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) (citing *Zadvydas*, 533 U.S. at 690–91). The key substantial fact in the government's favor is that the petitioner received a custody redetermination hearing in November of 2025, in which an IJ determined that the petitioner was a flight risk and a danger to the community. The question then is whether the petitioner has presented evidence of materially changed circumstances since then. He has not.

"[B]y definition the first justification—preventing flight—is weak or nonexistent where removal seems a remote possibility at best." *Zadvydas*, 533 U.S. at 690. The respondents argue that the petitioner's case is moving swiftly. *See generally* ECF No. 8. But the petitioner has put forward evidence that his deportation is not foreseeable—explaining that the BIA remanded his case because the Immigration Court did not establish a "complete transcript of [Petitioner's] August 25, 2025, hearing and the Immigration Judge's oral decision." Board's remand order, Pet'r's. Ex. 9, ECF No. 10-1; Notice of hearing, Pet'r's Ex. 10, ECF No. 10-2. Consequently, the BIA concluded it was unable to adjudicate the petitioner's appeal, and as a result, the petitioner must appear before the immigration court once again to adjudicate his withholding proceedings. Pet'r's Ex. 10, ECF No. 10-2.

While the petitioner's ongoing withholding-only proceedings do not, by themselves, render his detention indefinite, *Prieto-Romero v. Clark*, 534 F.3d 2053, 1063 (9th Cir. 2008), the petitioner's pending U-Visa application and pending immigration court proceedings weighs in favor of constituting a material change in his risk of flight, thus increasing the likelihood of an

erroneous deprivation of liberty absent a further detention hearing. *See David G.M. v. Chestnut*, 2026 WL 127613, at *2 (E.D. Cal. Jan. 17, 2026) (finding "persuasive Petitioner's argument that there is further mitigation of flight risk because he has a viable path toward immigration relief and a pathway to lawful permanent residence through his asylum application").

"The second justification—protecting the community—does not necessarily diminish in force over time." *Zadvydas*, 533 U.S. at 690. The factor "'most pertinent to assessing dangerousness' is 'the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (quoting *Singh*, 638 F.3d at 1206). Here, the petitioner has not presented any evidence of a **material change in circumstances** that may mitigate the IJ's November 2025 finding that he presented a danger to the community. The court recognizes that the petitioner does not have an extensive criminal record (Criminal record, Pet'r's Ex. 3, ECF No. 1-2 at 46–57). However, the petitioner fails to provide this court with points and authorities to support that, armed with this information, this court can directly review the IJ's bond decision, which he essentially asks the court to do in his petition.

Based on the absence of any evidence of a material change in circumstances, I find that the risk of erroneous deprivation to be low. In other words, the petitioner has not offered a reason to believe that the IJ's dangerousness determination might be different at a second bond hearing. While the petitioner's evidence may warrant a second bond hearing as to his flight risk, his failure to present mitigating circumstances as to dangerousness pushes the second factor in favor of the respondents.

Under the final factor, the court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. Higher courts have repeatedly recognized that, "[t]he government has an obvious interest in protecting the public from dangerous criminal [noncitizens]." *Rodriguez Diaz*, 53 F.4th at 1208 (citations omitted) (quoting *Demore*, 538 U.S. at

515). This interest is somewhat mitigated here by the low fiscal and administrative burdens associated with a second bond hearing. *See D.L.C. v. Wofford*, 2026 U.S. Dist. LEXIS 1007, at *12 (E.D. Cal. Jan. 5, 2026) ("Custody hearings in immigration court are routine and impose a minimal cost on the government.") (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). However, given the lack of changed circumstances relevant to the IJ's prior finding of dangerousness, the government's interest in not having to convene successive detention hearings prevails.

Accordingly, after applying the *Mathews* factors, I find that due process does not require a second bond hearing.[7]

### B. Cruz-Olvera's request for attorney's fees and costs is denied without prejudice.

The petitioner moves for costs and attorney's fees pursuant to the Equal Access to Justice Act (EAJA). *See* ECF No. 1 at 31. The EAJA provides in part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B).

Here, the petitioner's requested fees and costs under the EAJA is premature because the court has not yet entered a final judgment. Thus, the request is denied without prejudice. The court will consider a motion seeking reasonable fees and costs under the EAJA filed within thirty days of the judgment.

---

[7] I note that the court's finding is not to say the respondents may detain the petitioner indefinitely, rather, based on the record, and absence of mitigating circumstances regarding the IJ's prior finding of dangerousness, I find that due process does not require additional protections *at this time*.

IV.   Conclusion

IT IS HEREBY ORDERED that Cruz-Olvera's petition for writ of habeas corpus [ECF No. 1] is DENIED without prejudice, as set forth in this order.

IT IS FURTHER ORDERED that Cruz-Olvera's request for attorney's fees is denied without prejudice.

The Clerk of Court is kindly instructed to enter judgment accordingly and to close this case.

Dated: March 6, 2026

_____
Cristina D. Silva
United States District Judge